O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DIETER HUCKESTEIN,                    )   Case No. CV 10-04228 DDP (PJWx)
                                      )
                Plaintiff,            )   **ORDER DENYING MOTION TO DISMISS**
                                      )
      v.                              )   [Motion filed on November 3,
                                      )   2010]
TIMOTHY L. BLIXSETH and               )
BLIXSETH GROUP OF WASHINGTON          )
LLC, limited liability               )
company,                              )
                                      )
                Defendants.           )
_____       )

    Presently before the Court is Timothy Blixseth and Blixseth
Group of Washington, LLC's (collectively "Defendants") Motion to
Dismiss.  Defendants motion is opposed by Plaintiff Dieter
Huckstein ("Huckstein").  After reviewing the parties' moving
papers, considering the arguments therein, and hearing oral
argument, the court DENIES the motion.

I.    BACKGROUND

    On or about December 21, 2005,Huckstein and World Cup LLC
entered into an employment agreement ("Employment Agreement") in
which Huckstein became the President and Chief Executive Officer of
World Cup LLC.  (First Amended Complaint "FAC" ¶ 7.)  Pursuant to

the terms of the Employment Agreement, Huckstein was to be employed in such capacity for a five-year term starting February 15, 2006. (Id. ¶ 8.)   Important for purposes of this lawsuit, the Employment Agreement included certain pledges of property and indemnity and also contained provisions in the case of termination.

Section 8.2 of the Employment Agreement provided that "[a]s compensation for entering into this Agreement, [World Club] agrees to cause a Lot within the Yellowstone Mountain Club Subdivision, Big Sky, Montana, to be conveyed to Huckestein." (Id. ¶ 10.)

Section 15.1 of the Employment Agreement provided that Huckestein may terminate the agreement for any reason upon ninety days notice and receive no further compensation following the ninety day period.  (Id. ¶ 11.)

Section 15.2 of the Employment Agreement provided that World Club may terminate the agreement "for any reason upon written notice to Huckestein and the payment to Huckestein of the Base Compensation owning [sic] under the remaining terms of this Agreement, or thirty (30) months worth of Base Compensation payments, whichever is less." (Id. ¶ 12.)

Section 15.3 of the Employment Agreement provided that Huckestein may also elect to terminate the Agreement upon ninety days written notice and be compensated as set forth in Paragraph 15.2if any of the following conditions or events occur: (1) Timothy L. Blixseth no longer Manager of World Club or Yellowstone Mountain Club, LLC,(2) Timothy L. Blixseth no longer controls at least fifty percent (%50) of World Club or Yellowstone Mountain Club, LLC, or (3) World Club is in material breach of the

1   Agreement and has failed to cure the breach within a reasonable
2   time of written notice.  (Id. ¶ 13.)

3       Section 17 of the Employment Agreement set out an indemnity
4   agreement that stated that World Club would "indemnify Huckestein
5   in his capacity as an employee and agent of [World Club], and hold
6   [Huckestein] harmless from any and all cost, expense or liability,
7   of any nature, arising out of or relating to any acts, omissions or
8   decisions made by him on behalf or in the course of performing
9   services for [World Club] . . . ."  (Id. ¶ 14.)  Section 17 also
10  stated that Huckestein would be "named insured under all liability
11  insurance policies now in force or hereafter obtained covering any
12  officer or director of [World Club] in his capacity as an officer
13  or director."  (Id.)

14      Section 19 of the Employment Agreement states that Huckestein
15  and World Club agree to mediate any dispute under the Agreement.
16  Section 22 states that the Employment Agreement is to be governed
17  by the laws of the state of Washington.  (Id. ¶¶ 15-16.)

18      On February 16, 2006, Blixseth and Huckestein entered into an
19  operating agreement for Yellowstone Club World, LLC ("YCW").  (Id.
20  ¶ 17.)  Blixseth became a member of YCW, with a ninety percent
21  ownership interest, and Huckestein became a member of YCW with a
22  ten percent ownership interest.  (Id. ¶¶ 17-18.) In September,
23  World Club and Huckestein entered into a First Amendment to the
24  Employment Agreement, whereby YCW was substituted as a party in
25  place of World Club.  (Id. ¶ 22.)

26      In late 2006, Blixseth and his wife filed for dissolution of
27  their marriage in Superior Court in California, and in June 2008
28  the couple executed a Marital Settlement Agreement ("MSA") whereby

Blixseth's ninety percent interest in YCW was transferred, or would soon be transferred, to his wife. (Id. ¶ 24.)  The MSA also terminated Blixseth's management of YCW and stated that:

> [Blixseth] will assume responsibility for the employees of YCW and relieve [Edra Blixseth] of future obligations with regard thereto, other than the obligation to provide Dieter Huckestein with either a lot at the Yellowstone Club or the payment he is due in lieu thereof.

(Id. ¶ 26.)  In July 2008, Huckestein notified Blixseth of his resignation, and he specifically invoked Section 15.3 of the Employment Agreement in so doing. (Id. ¶¶ 28-29.)  In September 2008, Blixseth Group (or "BGW") assumed all of the obligations Blixseth owed to the YCW employees and Huckestein.  (Id. ¶ 33.)

In March 2009, Edra Blixseth filed a petition for bankruptcy under Chapter 11, and a Bankruptcy Court appointed a Trustee for the YCW bankrupt estate.  (Id. ¶¶ 41-42.)  In November 2009, Huckestein filed a proof of claim against YCW, seeking 4.2 million for the unpaid Base Compensation and Lot under the Employment Agreement.  In turn, the Trustee of the YCW estate asserted claims against Huckestein.  Ultimately, Huckestein and YCW settled and reached a mutual agreement that was approved by the bankruptcy court.  (Id. ¶¶ 44-47.)  That settlement included costs that were charged to Huckestein for acts he performed while employed by YCW. (Id. ¶ 48.)

Now, Huckestein brings suit against Blixseth and BGW. Huckestein alleges five causes of action.  The first four claims are based on the Employment Agreement and are

contractual. The fifth and final claim is against Blixseth alone as the alter ego of YCW.  (<u>Id</u>.)

**II.   LEGAL STANDARD**

    **A.   Rule 12(b)(6)**

Rule 8 of the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  When considering a 12(b)(6) motion to dismiss for failure to state a claim, "all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).

A court need not accept as true conclusory allegations or allegations stating a legal conclusion.  <u>In re Stac Elecs. Sec. Litig.</u>, 89 F.3d 1399, 1403 (9th Cir. 1996); <u>Iqbal v. Ashcroft</u>, 129 S.Ct. 1937, 1940-41 (2009) ("mere conclusions[] are not entitled to the assumption of truth.").  A court properly dismisses a complaint on a Rule 12(b)(6) motion based upon the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under the cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  The plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  That is, the plaintiffs' obligation requires more than "labels and

1   conclusions" or a "formulaic recitation of the elements of a

2   cause of action." Id. at 1964-65.

3        "Generally, a district court may not consider any

4   material beyond the pleadings in ruling on a Rule 12(b)(6)

5   motion." Hal Roach Studios, Inc. v. Richard Feiner & Co.,

6   896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "However, material

7   which is properly submitted as part of the complaint may be

8   considered." Id.

9   **III. DISCUSSION**

10       Defendants seek to dismiss Huckestein's contractual

11  claims on the grounds that (1) Defendants are not parties to

12  the Employment Agreement; (2) Huckestein is barred from

13  raising them by res judicata; and (3) Huckestein's alter ego

14  claim is the property of the bankruptcy trustee.  In

15  response, Huckestein counters (1) that Defendants expressly

16  assumed the obligations in the Employment Agreement, and are

17  therefore the proper party for enforcement of that agreement;

18  (2) res judicata does not apply because the earlier

19  settlement involved different parties; and (3) his alter ego

20  claim is not the property of the bankruptcy estate. (Pl's

21  Opp'n 2:21-27-3:1-5.)

22       In support of their various arguments, both parties rely

23  on extrinsic evidence that goes beyond the pleadings.  In

24  general, a court does not look beyond the pleadings when

25  considering a motion to dismiss.  Lee v. City of Los Angeles,

26  250 F.3d 668, 690 (9th Cir. 2001) (holding that the district

27  court erred in granting a motion to dismiss by relying on

28  extrinsic evidence and by taking judicial notice of disputed

matters of fact in support of its ruling).  A court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment.  <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986).  But a court may not take judicial notice of a fact that is "subject to reasonable dispute."  Fed. R. Evid. 201(b).  Here, resolution of Defendants' motion to dismiss would require the court to resolve facts that are subject to reasonable dispute, and Plaintiff has alleged "plausible grounds to infer" that his claims rise "above the speculative level."  Therefore, the court concludes that dismissal of Plaintiff's complaint is not appropriate.

**IV.   CONCLUSION**

     For the foregoing reasons, the court DENIES Defendants' Motion to Dismiss.

IT IS SO ORDERED.

Dated: January 19, 2011

DEAN D. PREGERSON
United States District Judge